**MARALAN LAW, P.C.**
SAM MARALAN, State Bar No. 298866
3080 Bristol Street, Suite 630
Costa Mesa, California 92626
Telephone: (714) 641-0506
Facsimile: (714) 641-3604
sm@maralanlaw.com

Attorneys for Plaintiff
JOHN HORST

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA, SOUTHERN DIVISION**

JOHN HORST, an individual,

Plaintiff,

vs.

MIGUEL PAREDES, an individual and as Trustee of the Karish Industries ESOP,

Defendant.

Case No.
Assigned for All Purposes:

**COMPLAINT FOR:**

**1. BREACH OF FIDUCIARY DUTY OF PRUDENCE (ERISA § 404(a)(1)(B))**

**2. BREACH OF FIDUCIARY DUTY OF LOYALTY (ERISA § 404(a)(1)(A))**

**3. BREACH OF CONTINUING DUTY TO MONITOR (ERISA § 404(a)(1))**

**4. CO-FIDUCIARY LIABILITY (ERISA § 405(a))**

**5. EQUITABLE RELIEF (ERISA § 502(a)(3))**

**[DEMAND FOR JURY TRIAL]**

COMES NOW, Plaintiff JOHN HORST ("Horst"), by and through his attorneys, brings this action against Defendant MIGUEL PAREDES ("Paredes" or "Trustee"), an individual and in his capacity as Trustee of the Karish Industries, Incorporated ("Karish") Employee Stock Ownership Plan, pursuant to the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), 29 U.S.C. §§ 1109 and 1132, and hereby alleges as follows:

## INTRODUCTION

This is an ERISA fiduciary-duty action arising from the Trustee's use of the Karish Industries, Incorporated Employee Stock Ownership Plan's ("ESOP") shareholder voting power to remove Horst from Karish's Board of Directors and enable a conflicted insider to regain control of the company.

On September 8, 2023, Defendant Miguel Paredes, acting as the sole Trustee of the ESOP, exercised his shareholder voting authority to remove Horst from Karish's Board. Paredes acted within hours of receiving a one-sided email from Steve Brodock, Karish's former president and then-consultant, who held more than $7.5 million in personal promissory notes from Karish and openly stated his desire to return and run the company. Paredes did not contact Horst, investigate the allegations, obtain independent fiduciary or legal advice, review the effect of the proposed action on ESOP participants, or document any participant-focused analysis before executing the written shareholder consent.

The September 8 action immediately altered Karish's governance structure. Horst was removed from the Board, Brodock became the only remaining director, and ten days later Horst was terminated as Karish's Chief Executive Officer. Paredes had advance notice from Brodock's own

email that removal from the Board would lead to Brodock's return to control and Horst's ouster from the company. Even after the termination, the restructuring of Brodock's employment protections, and the later creation of retroactively dated corporate-governance documents for banking purposes, Paredes took no corrective action to reassess or remedy the consequences of his vote.

ERISA required Paredes to exercise the ESOP's shareholder voting power with care, skill, prudence, diligence, and undivided loyalty to ESOP participants and beneficiaries. Paredes instead used that power in immediate response to a conflicted insider's request, without a prudent process and without any demonstrated consideration of the interests of the ESOP participants whose retirement plan owned the company. The ESOP and its participants were therefore exposed to the operational, governance, and financial consequences of Brodock's consolidation of control.

This action seeks relief under ERISA §§ 404, 405, 409, and 502, 29 U.S.C. §§ 1104, 1105, 1109, and 1132, including restoration of losses to the ESOP, surcharge, disgorgement, removal of Paredes as Trustee, appointment of an independent successor fiduciary, an equitable accounting, and all other appropriate equitable relief.

## PARTIES

1. Plaintiff John Horst is an individual residing in Orange County, California. Horst was employed by Karish as its Chief Executive Officer, President, and Secretary pursuant to an Employment Agreement effective June 30, 2023. Horst is a participant in the ESOP within the meaning of ERISA § 3(7), 29 U.S.C. § 1002(7), because he was employed by Karish on the ESOP's effective date, qualified for participation, did not elect out, and his account balance has not been distributed. In the

MARALAN LAW, P.C.
3080 BRISTOL STREET
SUITE 630
COSTA MESA
CALIFORNIA 92626
(714) 641-0506

alternative, Horst is a former employee with a reasonable expectation of reinstatement by virtue of pending arbitration proceedings in which Horst seeks reinstatement to employment as one of the remedies for wrongful termination, retaliation, and related employment-based claims.

2. Defendant Miguel Paredes is an individual residing in Los Angeles County, California. Paredes was appointed as the initial Trustee of the ESOP by unanimous written consent of the Karish Board of Directors on January 1, 2023, and the appointment was made to Paredes as an individual. The ESOP Plan and Trust Agreement names "Miguel Paredes as Trustee" in its opening paragraph. The Trustee's Certificate executed by Paredes on June 30, 2023 expressly confirms that he "acknowledges appointment as Trustee of the Trust and is a named fiduciary under the Employee Retirement Income Security Act of 1974." Paredes is a fiduciary within the meaning of ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A), because he exercises discretionary authority and control respecting management and disposition of ESOP assets, including the ESOP Trust's entire holding of Karish common stock and its associated shareholder voting power.

## JURISDICTION AND VENUE

3. This Court has subject-matter jurisdiction over this action under 28 U.S.C. § 1331 and ERISA § 502(e)(1), 29 U.S.C. § 1132(e)(1), which vests the district courts of the United States with exclusive jurisdiction of civil actions brought under ERISA § 502(a)(2) and (a)(3).

4. Venue is proper in this judicial district under ERISA § 502(e)(2), 29 U.S.C. § 1132(e)(2), because the ESOP is administered in this district, the breaches of fiduciary duty giving rise to this action occurred in this district, and Paredes may be found in this district. Venue is also proper under 28 U.S.C. § 1391(b) because a substantial part of the

MARALAN LAW, P.C.
3080 BRISTOL STREET
SUITE 630
COSTA MESA
CALIFORNIA 92626
(714) 641-0506

events and omissions giving rise to the claims occurred in this district.

## PLAINTIFF'S STANDING

5. Horst has standing to bring this action under ERISA § 502(a)(2) and (a)(3), 29 U.S.C. § 1132(a)(2) and (a)(3), as a "participant" within the meaning of ERISA § 3(7), 29 U.S.C. § 1002(7). Horst became a participant when he was employed by Karish on the ESOP's effective date, qualified for participation, did not elect out in writing, and his account balance has not been distributed. The ESOP separately addresses vesting and forfeiture, but defines a participant to include a former employee who qualified for participation and whose account balance has not been distributed. Horst therefore remains a participant under the ESOP's own terms regardless of any separate dispute concerning the extent to which his account had vested as of September 2023.

6. In the alternative, Horst has standing under *Firestone Tire & Rubber Co. v. Bruch* (1989) 489 U.S. 101, 117–118, and *Vaughn v. Bay Envtl. Mgmt., Inc.* (9th Cir. 2009) 567 F.3d 1021, 1025, because he is a former employee with a reasonable expectation of returning to covered employment if he prevails in the pending arbitration. Horst seeks reinstatement as a remedy for wrongful termination, retaliation under Labor Code section 1102.5, and related claims. If reinstated, Horst would resume covered employment and may satisfy the ESOP's future eligibility or vesting requirements.

7. This action does not require the Court to decide whether Karish later had contractual grounds to terminate Horst, whether Horst will prevail in arbitration, or whether Horst ultimately is entitled to reinstatement. Those issues concern separate defendants, separate duties, and separate causes of action. The question presented in this action is whether Paredes, as ERISA fiduciary and sole holder of the

MARALAN LAW, P.C.
3080 BRISTOL STREET
SUITE 630
COSTA MESA
CALIFORNIA 92626
(714) 641-0506

ESOP's shareholder vote, acted prudently and loyally at the time he exercised that power on September 8, 2023. Even if Karish and Brodock later establish that Horst could have been terminated on properly developed grounds, that showing cannot retroactively supply the investigation, deliberation, independence, or participant-focused analysis ERISA required from Paredes at the time of the vote, ten days later when he participated in the termination, and in the months that followed.

## FACTS COMMON TO ALL CAUSES OF ACTION

### A. The ESOP Transaction and the Concentration of Shareholder Voting Power in the Trustee

8. On or about June 30, 2023, Karish implemented an ESOP pursuant to the Karish Industries, Incorporated Employee Stock Ownership Plan and Trust Agreement effective January 1, 2023. The ESOP was structured as a leveraged buyout in which the ESOP Trust purchased 100,000 newly issued shares from Karish for $1,250,000, funded by an ESOP Loan, while Karish simultaneously redeemed all 1,001 outstanding shares from Brodock (661 shares) and Horst (340 shares) for an aggregate Redemption Price of $11,400,000 pursuant to the Stock Redemption and Purchase Agreement ("SRPA") executed by Horst, Brodock, Karish, and the ESOP Trust.

9. Following the ESOP transaction, neither Brodock nor Horst retained any equity ownership in Karish. Both held only unsecured promissory notes payable by Karish. Brodock received a Senior Note for $4,000,000 and a Junior Note for $3,524,000, both unsecured. Horst received a Junior Note for $3,876,000, also unsecured, scheduled to mature in 2043, subordinated to both of Brodock's Notes, and containing no acceleration provision triggered by Horst's removal or termination. The ESOP Trust became the sole shareholder of 100% of Karish's

MARALAN LAW, P.C.
3080 BRISTOL STREET
SUITE 630
COSTA MESA
CALIFORNIA 92626
(714) 641-0506

outstanding stock, namely 100,000 shares of common stock. Paredes, as the sole Trustee, held the exclusive voting power over all of those shares.

10. Under Section 9.3(c) of the ESOP, shares held in the suspense account, which comprised the vast majority of shares in this newly formed leveraged ESOP, were to be voted by the Trustee. Under Section 9.6, for all matters other than the major corporate transactions enumerated in ERISA § 409(e)(3), Company stock was to be voted by the Trustee. The post-closing result of these provisions was that Paredes alone held and exercised the entire shareholder voting power over a closely held California corporation in which two sitting directors operated under written Employment Agreements.

11. The governing documents did not make Paredes a director, officer, or day-to-day manager of Karish. He was not placed on the Board. He acted solely as Trustee and named fiduciary of the ESOP. The concentration of shareholder authority in Paredes meant that ERISA's duties of prudence and loyalty supplied the only meaningful constraint on how the ESOP's voting rights could be exercised, including the rights of director election and removal under California Corporations Code §§ 303 and 305(b).

**B. The Board of Directors, Horst's Employment, and Brodock's Limited Consulting Role**

12. At the time of closing, the Karish Board of Directors consisted of two directors: Brodock and Horst. Horst was employed as Chief Executive Officer, President, and Secretary under the Horst Employment Agreement ("<u>Horst EA</u>"), effective June 30, 2023, for an Initial Term of three years with automatic one-year renewals. Section 3.2 of the Horst EA limited termination to "Just Cause," defined as seven enumerated grounds including gross negligence, repeated neglect of duties, breach of

MARALAN LAW, P.C.
3080 BRISTOL STREET
SUITE 630
COSTA MESA
CALIFORNIA 92626
(714) 641-0506

fiduciary duty, fraud, and similar serious misconduct. Section 3.2 also required the Board to provide Horst with written notice of any alleged grounds and an opportunity to cure, and to act by formal Board resolution.

13. Under Karish's Bylaws, Article IV, Section 6, if the Board did not elect a Chairman, the Chief Executive Officer and President was to exercise and perform the duties of Chair. No Chairman was elected. Horst, as Chief Executive Officer and President, therefore served as the de facto Chairman of the Karish Board.

14. Brodock occupied a far more limited role. Brodock entered into an Employment Agreement effective June 30, 2023 through December 31, 2023, at a base salary of $175,000, in a consulting and transition capacity. He was not appointed as an officer at closing. Section 2 of the Brodock Employment Agreement limited his duties to rendering "services to Employer relating to the Business" as directed. Brodock had agreed in advance of closing to retire from Karish, with a target retirement date subsequently accelerated to September 30, 2023.

15. Brodock's principal economic interest after closing was in seeing the Senior Note and Junior Note payable to him serviced and paid in full. Neither Note contained an acceleration trigger keyed to Brodock's termination, but service of those Notes depended on the continuing financial health of Karish, the absence of competing claims on Karish's cash flow, and Brodock's ability to direct Karish's operations in a manner favorable to himself. Brodock had every personal incentive to regain operational control of Karish, to limit any independent voice on the Board, and to secure a Trustee who would act at his direction.

**C. Horst's Purported Removal and Termination.**

16. On September 8, 2023, at approximately 12:01 PM, Brodock emailed Paredes at his PFS email address with a one-sided list of

MARALAN LAW, P.C.
3080 BRISTOL STREET
SUITE 630
COSTA MESA
CALIFORNIA 92626
(714) 641-0506

unverified allegations against Horst. The email subject line was "Board of Directors." The email was marked "Importance: High." Brodock's email contained approximately ten bullet-pointed complaints, none of which were supported by documentary evidence, independent corroboration, or any form of investigation.

17. Prior to the morning of September 8, 2023, Paredes had not involved himself in the day-to-day operations of Karish. He had received no documented complaints from any other Karish employee about Horst's performance. He had received no Board resolution, no internal investigation report, no audit finding, and no documented financial concern bearing on Horst's operation of the Company. He had not conferred with Karish's regular auditors, with independent counsel for the ESOP, or with any independent third party about Horst's stewardship of the Company. He had not held the annual shareholder meeting, despite the September 27, 2023 annual meeting date set by Article II, Section 2 of the Bylaws falling only nineteen days later.

18. Brodock's complaints included, among others, allegations that Horst tried to get Brodock fired, that someone attempted to hack Brodock's email with no evidence linking Horst, that Horst had spoken about firing employees before they reached vesting, that Horst blocked a $3,000 tax payment, that employees were unhappy under Horst's leadership, that Horst failed to provide ESOP information to employees, that Horst caused Karish to be terminated as a client by its bank, and that Horst was "doing several secretive things with invoices, banking, cash flow."

19. Brodock concluded his email by stating: "I would like to formally recommend his removal from the Board of Directors at this time." Brodock further disclosed his personal interest by stating his

MARALAN LAW, P.C.
3080 BRISTOL STREET
SUITE 630
COSTA MESA
CALIFORNIA 92626
(714) 641-0506

intention to "come back and run the company" and suggesting that Horst be offered "the opportunity to craft a story to resign" to avoid "everyone knowing he was fired." Brodock's email thus revealed on its face that the removal was motivated by Brodock's desire to regain personal control of Karish, not by any concern for ESOP participant welfare.

20. Approximately two hours and forty-one minutes later, at 2:42 p.m. on September 8, 2023, Paredes responded to Brodock, not to Horst, with a message marked "Importance: High." Attached was a fully executed Written Consent of Sole Shareholder removing Horst from the Board pursuant to Article II, Section 7 of the Bylaws and California Corporations Code § 303. The transmittal email read in full: "Attached please find the written shareholder action removing John from the Karish Industries Board of Directors." Pacific Fiduciary Services personnel Ty Fukumoto and Dale Lowe were copied. Horst was not copied, not contacted, not notified, not asked for any response, and not informed of the action until after it was complete.

21. The annual shareholder meeting was scheduled for September 27, 2023, just nineteen days after Paredes acted, pursuant to Article II, Section 2 of the Bylaws. Rather than raise Brodock's complaint at the scheduled meeting, where Horst would have received formal notice, an opportunity to respond, and the protections of a deliberative process, Paredes used the written consent mechanism to bypass the meeting. The annual meeting was not held on September 27, 2023, and no contemporaneous shareholder meeting on the September 8 removal was ever convened.

**D. From Removal to Termination to Seizure of Control.**

22. On September 18, 2023, with Brodock now the only remaining director by operation of the September 8 written consent, Horst was

MARALAN LAW, P.C.
3080 BRISTOL STREET
SUITE 630
COSTA MESA
CALIFORNIA 92626
(714) 641-0506

terminated as Chief Executive Officer of Karish without notice, without investigation, without the written notice of grounds required by Section 3.2 of the Horst EA, and without any process recognizable as Just Cause termination. Paredes had ample notice that termination was imminent, having received Brodock's September 8 email forecasting Brodock's intent to "come back and run the company" and suggesting that Horst be offered "the opportunity to craft a story to resign." The Trustee took no step on or before September 18, 2023 to evaluate whether the contemplated termination served the interests of ESOP participants, whether Horst's removal as CEO would expose the ESOP's stock investment to operational, regulatory, customer-relationship, or banking risk, or whether the Trustee's continuing exercise of shareholder voting authority should be employed to constrain Brodock's accelerating consolidation of control.

23. On September 18, 2023, at 11:40 a.m., Steve Goodman of Lynch, Cox, Gilman & Goodman, Karish's outside ESOP and corporate counsel, transmitted to Brodock a package of corporate-restructuring documents that included a First Amendment to Bylaws, an Amended Brodock Junior Note, an Amended Horst Junior Note, which conspicuously preserved the absence of any acceleration trigger on termination, an Amended Brodock Employment Agreement, limiting Brodock's termination to "fraud, embezzlement, or theft," and corresponding minutes. Karish and Brodock never produced the September 18, 2023 Goodman transmittal package or its attachments in the AAA arbitration; the package surfaced only after Horst subpoenaed the documents from Goodman.

24. The Amended Brodock Employment Agreement was drafted by Karish's outside counsel approximately thirty days after closing, while

MARALAN LAW, P.C.
3080 BRISTOL STREET
SUITE 630
COSTA MESA
CALIFORNIA 92626
(714) 641-0506

Horst was still in office, and was designed to insulate Brodock from termination on the same grounds for which Horst had no equivalent protection. Horst's original Just Cause clause enumerated seven grounds covering negligence, neglect of duties, breach of fiduciary duty, fraud, and related serious misconduct. Brodock's amended Just Cause clause permitted termination only on three narrow grounds amounting to criminal conduct. The asymmetry establishes that the September 8 to September 18 sequence was the product of a coordinated restructuring effort, calibrated to Brodock's exclusive benefit and Horst's exclusive exposure, in which the Trustee participated by exercising the ESOP's voting authority in service of the restructuring.

25. On or about October 4, 2023, Brodock requested that outside counsel prepare corporate-governance documents reflecting his authority to act as President because a new bank required documentation before opening or maintaining Karish's banking relationship. In response, outside counsel prepared shareholder and board minutes dated effective September 19, 2023, which purported to confirm Brodock as Karish's sole director and appoint him as an officer. Brodock thereafter used those documents in connection with the bank relationship.

26. Horst is informed and believes, and on that basis alleges, that these documents were prepared after the fact to supply corporate authority that did not validly exist when Horst was terminated. The documents were dated retroactively and purported to rely on a corporate-consent procedure that was inconsistent with Karish's governing documents. Horst is further informed and believes that Paredes knew of, authorized, ratified, acquiesced in, or failed to correct the use of these documents.

**E. The Trustee's Complete Failure of Process.**

27. At no point between 12:01 PM and 2:42 PM on September 8, 2023, or at any time before or after, did the Trustee:

a. Contact Horst to hear his side of Brodock's allegations;

b. Conduct any independent investigation into the truth or falsity of Brodock's claims;

c. Engage independent legal counsel to advise on the propriety of removing a sitting director using ESOP shareholder voting power;

d. Analyze whether removing Horst from the Board served the interests of ESOP Plan participants rather than Brodock's personal interests;

e. Consider the impact on Karish's operations, stability, or the security of the ESOP's investment in Karish stock;

f. Evaluate whether Brodock, a departing consultant with over $7.5 million in personal promissory notes from Karish, had an obvious conflict of interest;

g. Consider the foreseeable domino effect of the removal, including Brodock's assumption of sole control over the Board, the termination of Horst's employment, and Brodock's effective seizure of Karish;

h. Document any analysis, reasoning, or deliberative process whatsoever;

i. Await the annual shareholder meeting scheduled for September 27, 2023, just nineteen days later, where the matter could have been addressed through proper deliberative channels;

j. Consider less drastic alternatives such as an independent

MARALAN LAW, P.C.
3080 BRISTOL STREET
SUITE 630
COSTA MESA
CALIFORNIA 92626
(714) 641-0506

investigation, a special Board meeting, independent legal advice, or independent fiduciary review before taking any action on Brodock's accusations; or

k. Exercise the ESOP's shareholder voting power to appoint the Independent Director required by Section 5.9(a) of the SRPA before taking any action on Brodock's complaint.

28. Instead, within less than three hours of receiving a one-sided email from an obviously conflicted party, the Trustee executed a corporate governance action that removed Horst from the Board and aligned himself with Brodock's objective of regaining control of Karish. That is the conduct challenged here.

**FIRST CAUSE OF ACTION**
**BREACH OF FIDUCIARY DUTY OF PRUDENCE**
**(29 U.S.C. § 1104(a)(1)(B))**
**(AGAINST DEFENDANT PAREDES)**

29. Horst incorporates by reference each and every allegation contained in Paragraphs 1 through 28 above as if fully set forth herein.

30. ERISA imposes upon fiduciaries a duty to act "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims." 29 U.S.C. § 1104(a)(1)(B). This standard requires an ongoing, procedural inquiry into the fiduciary's conduct as of the time the decision was made. A fiduciary's decision-making process must reflect adequate investigation and deliberation.

31. The Trustee's conduct fell far below the level of investigation, deliberation, independence, and documentation expected of a prudent ESOP fiduciary exercising sole shareholder power over a closely held company. A prudent trustee presented with accusations from a conflicted

MARALAN LAW, P.C.
3080 BRISTOL STREET
SUITE 630
COSTA MESA
CALIFORNIA 92626
(714) 641-0506

insider would have paused, investigated, gathered both sides, obtained independent advice, and analyzed whether the proposed action served ESOP participants before acting.

32. The Trustee did none of these things. He acted within approximately 161 minutes, without investigation, without hearing from Horst, without independent legal advice, and without any documented participant-focused analysis.

33. The Trustee's imprudence is further compounded by his failure to utilize the safeguards built into the ESOP formation documents, including: the Discretionary Fiduciary mechanism under ESOP Plan Section 9.4(k), which permitted Karish to appoint an independent fiduciary for matters affecting Karish Stock including the exercise of voting rights; the Independent Director requirement under SRPA Section 5.9(a), which was designed to provide independent oversight of corporate governance; and the annual shareholder meeting scheduled for September 27, 2023, just nineteen days after the removal.

34. As a direct and proximate result of Paredes' breaches of the duty of prudence, the ESOP and its participants have suffered losses, including but not limited to the diminution in value of Karish stock, disruption to Karish operations, and the enabling of Brodock's effective seizure of control of Karish for his personal benefit rather than the benefit of ESOP participants.

## SECOND CAUSE OF ACTION
## BREACH OF FIDUCIARY DUTY OF LOYALTY
## (29 U.S.C. § 1104(a)(1)(A))
## (AGAINST DEFENDANT PAREDES)

35. Horst incorporates by reference each and every allegation contained in Paragraphs 1 through 34 above as if fully set forth herein.

MARALAN LAW, P.C.
3080 BRISTOL STREET
SUITE 630
COSTA MESA
CALIFORNIA 92626
(714) 641-0506

36. ERISA requires fiduciaries to act "solely in the interest of the participants and beneficiaries" and "for the exclusive purpose of providing benefits to participants and their beneficiaries" and "defraying reasonable expenses of administering the plan." 29 U.S.C. § 1104(a)(1)(A).

37. The Trustee's actions on September 8, 2023 did not serve the interests of ESOP participants. They served the personal interests of Brodock. Brodock held over $7.5 million in personal promissory notes from Karish, wanted Horst removed, stated his desire to come back and run the Company, and obtained exactly that result through Paredes' immediate action.

38. The Trustee's loyalty failure is further evidenced by the direction of his communications. On September 8, 2023, the Trustee communicated exclusively with Brodock. The executed removal action was sent to Brodock. Horst, a sitting director and the CEO of Karish, was not contacted, notified, or given any opportunity to respond. A fiduciary acting "solely in the interest of participants" does not execute a signed corporate governance action at the unilateral request of a single conflicted party without so much as a phone call to the affected individual.

39. Brodock's own email revealed his personal motivation on its face: he stated his intention to "come back and run the company" and proposed offering Horst "the opportunity to craft a story to resign" to avoid "everyone knowing he was fired." A fiduciary acting solely in the interest of ESOP participants would have recognized these statements as red flags indicating that the removal request was driven by personal interest rather than participant welfare.

40. As a direct and proximate result of Paredes' breaches of the duty of loyalty, the ESOP and its participants have suffered losses in an amount to be determined at trial.

MARALAN LAW, P.C.
3080 BRISTOL STREET
SUITE 630
COSTA MESA
CALIFORNIA 92626
(714) 641-0506

## THIRD CAUSE OF ACTION
## BREACH OF CONTINUING DUTY TO MONITOR AND REMEDY
## (29 U.S.C. § 1104(a)(1))
## (AGAINST DEFENDANT PAREDES)

41. Horst incorporates by reference each and every allegation contained in Paragraphs 1 through 40 above as if fully set forth herein.

42. ERISA imposes on every fiduciary a "continuing duty to monitor trust investments and remove imprudent ones."

43. After September 8, 2023, the Trustee had an ongoing obligation to reassess whether his action served the ESOP's interests and whether the governance consequences that followed confirmed the imprudence of his decision.

44. After September 8, 2023, Paredes had an ongoing obligation to evaluate whether his vote had served the ESOP's interests and whether the governance consequences that followed confirmed the imprudence of his decision. The September 18, 2023 termination of Horst, executed without process by a Board that no longer included Horst; the September 18, 2023 Goodman restructuring package, asymmetrically protective of Brodock and never produced by Respondents in the arbitration; and the October 4–10, 2023 bank-driven backdating of corporate authority to "September 19, 2023" would each have triggered, in a prudent and loyal fiduciary, a documented reassessment, an investigation into the propriety of the September 8 vote, and corrective action under the ESOP's discretionary fiduciary mechanism in Section 9.4(k).

45. Instead of reevaluating or attempting to remedy the harm, the Trustee doubled down. He participated in Horst's termination on September 18, 2023 and permitted the post-removal consolidation of control to continue without any corrective action.

MARALAN LAW, P.C.
3080 BRISTOL STREET
SUITE 630
COSTA MESA
CALIFORNIA 92626
(714) 641-0506

46. The Trustee further failed to evaluate whether Brodock's subsequent assumption of control, including the appointment of new Board members and the resumption of operational authority, served ESOP participants or instead entrenched the very conflicted arrangement the Trustee had enabled.

47. As a direct and proximate result of Paredes' breach of his continuing duty to monitor and to remedy, the ESOP and its participants have suffered ongoing losses in an amount to be proved at trial, including all losses described in the First and Second Causes of Action that continued to accrue, and that could have been mitigated by prudent and loyal fiduciary action after September 8, 2023.

## FOURTH CAUSE OF ACTION
## CO-FIDUCIARY LIABILITY
## (29 U.S.C. § 1105(a))
## (AGAINST DEFENDANT PAREDES)

48. Horst incorporates by reference each and every allegation contained in Paragraphs 1 through 47 above as if fully set forth herein.

49. This claim is pleaded in the alternative. Under ERISA § 405(a), 29 U.S.C. § 1105(a), a fiduciary is liable for the breach of another fiduciary with respect to the same plan if the fiduciary knowingly participates in or knowingly undertakes to conceal the breach, enables the breach by his own failure to comply with § 1104(a), or has knowledge of the breach and fails to make reasonable efforts under the circumstances to remedy it.

50. To the extent discovery establishes that Brodock or any other Karish-aligned person exercised or influenced plan-related fiduciary functions in connection with the September 8, 2023 vote, the September 18, 2023 termination, the September 18, 2023 Goodman restructuring

MARALAN LAW, P.C.
3080 BRISTOL STREET
SUITE 630
COSTA MESA
CALIFORNIA 92626
(714) 641-0506

package, or the October 4–10, 2023 bank-driven backdating, Paredes is co-fiduciary liable for those breaches by virtue of his knowing participation in them, his enabling of them through his own failure to comply with § 1104(a), and his failure upon learning of them to take reasonable corrective action.

51. As a direct and proximate result of Paredes' co-fiduciary liability, the ESOP and its participants have suffered losses in an amount to be proved at trial.

**FIFTH CAUSE OF ACTION**
**EQUITABLE RELIEF**
**(29 U.S.C. § 1132(a)(3))**
**(AGAINST DEFENDANT PAREDES)**

52. Horst incorporates by reference each and every allegation contained in Paragraphs 1 through 51 above as if fully set forth herein.

53. ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), authorizes a participant, beneficiary, or fiduciary to bring a civil action to obtain "other appropriate equitable relief" to redress violations of ERISA or to enforce the terms of the ESOP. Available equitable remedies include surcharge, disgorgement, removal of the breaching fiduciary, appointment of a successor fiduciary, an equitable accounting, and injunctive relief.

54. As a result of the fiduciary breaches alleged herein, Plaintiff is entitled to equitable relief including (a) removal of Paredes as Trustee of the ESOP and appointment of an independent successor fiduciary; (b) surcharge against Paredes for all losses to the ESOP caused by his breaches; (c) disgorgement of all fees, compensation, and profits received by Paredes and Pacific Fiduciary Services in connection with the Karish ESOP from January 1, 2023 to the present; (d) a full equitable accounting of all ESOP assets, transactions, communications, and trustee actions

MARALAN LAW, P.C.
3080 BRISTOL STREET
SUITE 630
COSTA MESA
CALIFORNIA 92626
(714) 641-0506

from June 30, 2023 to the present, including all communications with Brodock, Karish, Karish's outside counsel, and any third party concerning the September 8, 2023 removal, the September 18, 2023 termination, the September 18, 2023 Goodman restructuring package, and the October 4–10, 2023 backdated corporate-governance instruments; (e) an order requiring Paredes to make the ESOP whole for all losses resulting from his breaches; and (f) such other equitable relief as the Court deems appropriate.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Horst prays for relief as follows:

1. A declaration that Paredes breached his fiduciary duties of prudence, loyalty, and continuing monitoring under ERISA;

2. An order requiring Paredes to make the ESOP whole for all losses resulting from his breaches of fiduciary duty, pursuant to ERISA § 409(a), 29 U.S.C. § 1109(a);

3. An order removing Paredes as Trustee of the ESOP and appointing a successor trustee;

4. Surcharge against Paredes for all losses to the ESOP caused by his breaches;

5. Disgorgement of all fees and profits received by Paredes in connection with his service as Trustee of the Karish ESOP from January 1, 2023 to present.

6. A full accounting of all ESOP assets, transactions, communications, and trustee actions from January 1, 2023 to the present;

7. An order directing the successor trustee to evaluate and, if appropriate, pursue available ESOP claims against Karish, Brodock, and other responsible persons;

8. Pre-judgment and post-judgment interest as allowed by law;

MARALAN LAW, P.C.
3080 BRISTOL STREET
SUITE 630
COSTA MESA
CALIFORNIA 92626
(714) 641-0506

9. Reasonable attorneys' fees and costs of suit pursuant to ERISA § 502(g), 29 U.S.C. § 1132(g); and

10. Such other and further relief as the Court may deem just and proper.

DATED: May 26, 2026 Respectfully submitted,

By:______________________________
Sam Maralan
MARALAN LAW, P.C.
Attorneys for Plaintiff
**JOHN HORST**

MARALAN LAW, P.C.
3080 BRISTOL STREET
SUITE 630
COSTA MESA
CALIFORNIA 92626
(714) 641-0506

**DEMAND FOR JURY TRIAL**

Plaintiff John Horst hereby demands trial by jury.

DATED: May 26, 2026 Respectfully submitted,

By:______________________________
Sam Maralan
MARALAN LAW, P.C.
Attorneys for Plaintiff
**JOHN HORST**

MARALAN LAW, P.C.
3080 BRISTOL STREET
SUITE 630
COSTA MESA
CALIFORNIA 92626
(714) 641-0506